UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARK J. THERIAULT,                )
                                  )
          Petitioner,             )
                                  )
     v.                           )          1:16-cv-00576-JAW
                                  )
                                  )
STATE OF MAINE,[1]                )
                                  )
          Respondent              )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner Mark J. Theriault seeks relief pursuant to 28 U.S.C. § 2254.  (Petition, ECF No. 1.)  Petitioner was convicted of unlawful sexual contact, and the state court sentenced him to a term of sixteen years in prison, with all but eight years suspended, to be followed by six years of probation.

In state court, Petitioner sought post-conviction review.  Although the trial court denied Petitioner's request for relief, on discretionary appellate review, the Law Court remanded to the trial court two claims of ineffective assistance of counsel for reconsideration under the prejudice prong of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Theriault v. State*, 2015 ME 137, 125 A.3d 1163.  The remanded claims involved whether Petitioner was prejudiced by either (1) counsel's failure

---

[1] Petitioner has named the State of Maine as the respondent.  His petition states the location where he alleges he is incarcerated.  (Petition, ECF No. 1 at 1.)  This recommended decision assumes, without deciding, that if Petitioner's claims are not dismissed, Petitioner would be permitted to name as the respondent the custodian of the facility where he is incarcerated.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) (holding that the "immediate custodian" is the appropriate respondent when a petitioner challenges "present physical confinement").

to cross-examine the victim as to whether Petitioner had a PlayStation at his house, or (2) counsel's failure to introduce evidence of the victim's inconsistent statements made during a forensic evaluation conducted by The Spurwink Child Abuse Program. *Theriault*, 2015 ME 137, ¶¶ 27-28, 125 A.3d 1163.[2]

On remand, the Superior Court concluded that Petitioner had not demonstrated ineffective assistance of counsel under either prong of the *Strickland* test. The Law Court denied further discretionary review.

In support of his ineffective assistance claims in this proceeding, Petitioner relies in part on a Maine Supreme Judicial Court order in a separate bar disciplinary proceeding involving trial counsel. In its order on the bar disciplinary matter, the Supreme Judicial Court concluded that counsel had violated several professional ethics rules in the course of his representation of Petitioner. *Bd. of Overseers of the Bar v. Hanson*, No. BAR-13-21 (June 2, 2014) (Mead., J.); *see United States v. Mercado*, 412 F.3d 243, 247 (1st Cir. 2005) (noting that the Court may take judicial notice of state court records). Petitioner argues that counsel's errors, as determined in the bar disciplinary proceeding, establish that counsel's performance was constitutionally deficient.

Petitioner's section 2254 claims are focused on counsel's pre-trial and trial performance. Petitioner fully exhausted all of his claims in state court. The State has requested dismissal of Petitioner's section 2254 petition on the merits. (Response, ECF No. 4).

---

[2] The Law Court concluded that the remaining claims were factually unsupported. *Theriault v. State*, 2015 ME 137, ¶ 26, 125 A.3d 1163.

After a review of the section 2254 petition and the State's request for dismissal, I recommend the Court grant the State's request, and dismiss the petition.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted in July 2008 for unlawful sexual contact with a minor under 12 years old (Class A), 17-A M.R.S. § 255-A(1)(F-1).[3]   (*State v. Theriault*, No. CARSC CR 2008-00262, Indictment, Docket Record at 1.)[4]   The indictment alleged that the sexual contact included penetration.[5]   (Indictment.)   On February 7, 2011, a one-day trial was held at which the victim, the victim's sister, and a hospital nurse examiner testified; the jury returned a guilty verdict.   (Trial Tr. at 43-48, 76, 87, 130, Docket Record at 4.)   On February 9, 2011, the Court sentenced Petitioner to a term of 16 years, with all but eight years suspended, to be followed by a term of six years of probation.   (Judgment and Commitment, Docket Record at 5.)

In February 2011, Petitioner retained new counsel and filed a motion for a new trial. (Docket Record at 7.)   In June 2011, the Sentence Review Panel of the Maine Law Court denied leave to appeal from the sentence.   (*State v. Theriault*, No. SRP-11-104, Docket

---

[3] The statute of conviction provides in pertinent part:

> A person is guilty of unlawful sexual contact if the actor intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is in fact less than 12 years of age and the actor is at least 3 years older and the sexual contact includes penetration.   Violation of this paragraph is a Class A crime.

17-A M.R.S. § 255-A(1)(F-1).

[4] The state court record was filed in paper form.   (ECF No. 5.)

[5] Petitioner contends that at trial, the State erroneously took the position it was not required to prove penetration.   (Petition at 11.)   The record reflects that the State acknowledged in its opening statement and closing argument that it was required to prove that penetration occurred.   (Trial Tr. at 12-13, 117.)

Record at 2.)  On August 19, 2011, the Law Court dismissed Petitioner's appeal from the conviction due to lack of prosecution.  (*State v. Theriault*, No. ARO-11-103, Order Dismissing Appeal, Docket Record at 2.)  In October 2012, the trial court denied the motion for a new trial.  (*Theriault*, No. CARSC CR 2008-00262, Docket Record at 8.)

On August 17, 2012, Petitioner filed a pro se petition for state court post-conviction review.  (*Theriault v. State*, No. CARSC-CR-2012-00437, Docket Record at 1.)  In November 2012, Petitioner retained his appellate counsel to represent him in the post-conviction proceeding, and in June 2013, Petitioner filed an amended petition.  (Docket Record at 1-2.)  Petitioner alleged the following claims of ineffective assistance: (1) insufficient communication between counsel and Petitioner; (2) failure to engage a private investigator or to conduct an adequate pretrial investigation; (3) failure to develop and present a defense strategy; (4) failure to secure the defense witnesses Petitioner suggested; (5) failure to object to evidence; (6) failure to cross-examine the victim regarding inconsistencies in her allegations; and (7) substandard advice to Petitioner as to whether to testify at trial (Petitioner maintained he was innocent and wanted to testify). (Pro se State Court Petition at 3-4; Amended State Court Petition at 1-2.)

After an evidentiary hearing in September 2013, the court denied the petition in March 2014.  (Docket Record at 2; Decision.)  In its decision following the evidentiary hearing, the court characterized the allegations as follows:  (1) failure to hire a private investigator; (2) failure to subpoena critical witnesses at trial; (3) failure to obtain an expert witness regarding the issue of suggestive interviewing of the minor victim; (4) failure to obtain an expert witness regarding the lack of physical findings; (5) failure to obtain

exculpatory agency records; (6) failure to challenge the competency of the minor victim to testify; and (7) failure to obtain character evidence pertaining to Petitioner. (Decision at 2.)

The Superior Court concluded that the prejudice prong of the *Strickland* test determined the outcome, and that Petitioner had not demonstrated prejudice with respect to any of the allegations of ineffective assistance of counsel. (Decision at 3-9.) In March 2014, Petitioner requested discretionary review of the post-conviction decision. (*Theriault v. State*, No. Aro-14-158, Docket Record at 1.)

In June 2014, the Supreme Judicial Court issued its order in the bar disciplinary matter regarding Petitioner's trial counsel. *Hanson*, No. BAR-13-21. The Court made a number of findings based on stipulated facts. In addition, the Court concluded:

> Attorney Hanson has acknowledged various errors on his part in relation to his representation of Mark Theriault. He understands and agrees that he did not utilize the court-approved private investigator to independently investigate the case or to pursue the areas of investigation suggested by his client prior to the trial. He understands and agrees that he did not spend sufficient time with his client to prepare him for the trial, or to make his decision regarding whether he would testify. He also understands and agrees that he did not request additional time to prepare his case for sentencing, or to prepare his client and the other witnesses for the sentencing proceeding. Attorney Hanson understands and agrees that by those failures, he failed to reasonably communicate with his client; to provide competent representation; or to act with reasonable diligence in his client's defense. Although his actions were not intentional attempts to violate the Maine Rules of Professional Conduct they nevertheless constitute violations of Rules 1.1, 1.3, 1.4 and 8.4(a)(d).

*Hanson*, No. BAR-13-21, at 6-7.[6]  Meanwhile, the Law Court issued a certificate of probable cause, which allowed Petitioner to appeal from the post-conviction ruling. (Theriault, No. Aro-14-158, Docket Record at 2.)

In December 2015, the Law Court held that the Superior Court misapplied the prejudice prong of the *Strickland* test:

> By employing only a portion of the *Strickland* principle, the court in effect employed the outcome-determinative test rejected in *Strickland* because it determined only whether the outcome was likely different than it would have been if the petitioner had been properly represented, without considering whether the guilty verdict and resulting conviction were unreliable and not worthy of confidence.

*Theriault*, 2015 ME 137, at ¶ 25, 125 A.3d 1163.  The Law Court focused particularly on the test the Superior Court applied to the claims that counsel failed to present evidence that Petitioner did not have a PlayStation at his house, and that counsel failed "to present any evidence of the prior exculpatory statements made by the victim during the Spurwink evaluation . . . ." *Id.* ¶¶ 27-28.  The Law Court also concluded that Petitioner was not entitled to a presumption of prejudice, but rather must prove that counsel's alleged errors caused him actual prejudice; the Court noted that its review of the presumption issue was for obvious error because Petitioner had not raised the issue in the Superior Court. *Id.* ¶¶ 16-18.

Regarding Petitioner's other claims, the Law Court concluded:

> For several of Theriault's challenges to Attorney Hanson's conduct, Theriault offered no evidence whatever of how he was prejudiced by those alleged failures. For example, Theriault did not present *any* evidence about

---

[6] The bar disciplinary matter also addressed two other unrelated cases involving the same attorney. *Bd. of Overseers of the Bar v. Hanson*, No. BAR-13-21 (June 2, 2014) (Mead., J.).

what information a private investigator might have found to provide an exculpatory explanation for the victim's accusations. On those points, Theriault failed to demonstrate entitlement to post-conviction relief regardless of how one might characterize the element of prejudice, because the complete absence of any evidence of prejudice would preclude any prospect of proving that the guilty verdict was unreliable and not entitled to confidence.

*Id.* ¶ 26. The Law Court vacated the judgment on the post-conviction petition and remanded the matter to the trial court for further proceedings. *Id.* ¶ 30.

In December 2015, the parties each submitted written argument on the issues remanded to the trial court. (*Theriault*, No. CARSC-CR-2012-00437, Docket Record at 3.) In March 2016, the Superior Court issued a decision in which it applied both prongs of the *Strickland* test to the claims regarding the PlayStation cross-examination and the Spurwink evidence. (Reconsidered Decision at 1.) The Superior Court concluded that counsel's performance was not deficient, and Petitioner was not prejudiced, as to either issue. (*Id.* at 2-4.)

Petitioner requested discretionary review of the Superior Court's decision. (*Theriault v. State*, No. Aro-16-190.) Counsel was appointed, and Petitioner argued that the Superior Court once again had misapplied the *Strickland* standard. (Docket Record at 2, Memorandum in Support of Certificate of Probable Cause at 1-2.) Petitioner argued that counsel's failure to impeach the victim constituted deficient performance, and that the cumulative effect of counsel's errors prejudiced Petitioner. (*Id.* at 7-13.)

In September 2016, the Law Court denied discretionary review. (Order Denying Certificate of Probable Cause.) The Law Court concluded: "After review of the record, which demonstrates that Theriault received effective assistance of counsel throughout the

entirety of the proceeding, the Court has determined that no further hearing or other action is necessary to a fair disposition." (*Id.*)

Petitioner states that he placed his section 2254 petition in the prison mailing system on November 15, 2016; the petition was filed on November 21, 2016. (Petition at 1, 18.) The State filed its response in December 2016. In January 2017, Petitioner filed a reply. (ECF No. 7.)

## II.  DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Regarding federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," pursuant to section 2254(d)(2).[7] *See Brumfield v.*

---

[7] Title 28 U.S.C. § 2254(d) addresses claims that were adjudicated on the merits in state court and states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

*Cain,* --- U.S. ---, ---, 135 S. Ct. 2269, 2276 (2015) (noting that a state court's conclusion that the record included "no evidence" on an issue was reviewed under section 2254(d)(2)). Both section 2254(d)(1) and section 2254(d)(2) are applicable to Petitioner's claims; the state court decisions regarding the claims related to the PlayStation cross-examination and the Spurwink evidence are reviewable under section 2254(d)(1), and the claims as to which the Law Court concluded there was no evidence of prejudice are reviewable under section 2254(d)(2).

As to review under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* --- U.S. ---, ---, 133 S.Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)).

The First Circuit has identified the following as some of the guidelines that may be used to determine whether a state court decision was objectively unreasonable under section 2254(d)(1):

(1) The focus of the inquiry is on the state court decision;

(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to 'the totality of the evidence' in evaluating the state court's decision;

---

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and

(5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

*Hurtado v. Tucker*, 245 F.3d 7, 18 (1st Cir. 2001). "The ultimate question on habeas . . . is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Id.* at 20.

In *Strickland*, the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697. The Court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

Claims of ineffective assistance of counsel are subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v.*

*Etherton*, --- U.S. ---, ---, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

The fact that his trial counsel was subject to a bar disciplinary action does not alter the standard of review, nor does it entitle Petitioner to a presumption of prejudice. The Supreme Court has held that a presumption of prejudice applies "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984). In *Cronic*, the Court determined that the issue was "whether the circumstances surrounding [the] representation" justified "a presumption that [the] conviction was insufficiently reliable to satisfy the Constitution." *Id.* at 662.

Professional ethics standards for attorneys "are 'only guides' to what reasonableness means;" they do not define what constitutes reasonable professional conduct for purposes of a constitutional challenge. *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (quoting *Strickland*, 466 U.S. at 688); *Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010); *see United States v. Nickerson*, 556 F.3d 1014, 1018 (9th Cir. 2009) (rejecting "that the violation of a rule of ethics or professional conduct by counsel before trial constitutes ineffective assistance of

counsel *per se*," and noting that "[s]uch a broad rule has been explicitly rejected by other circuits") (collecting cases); *Morin v. Thaler*, 374 F. App'x 545, 555 (5th Cir. 2010) ("[C]ounsel's violations of professional ethics are not *per se* prejudicial under *Strickland*.").  Petitioner, therefore, is not entitled to a presumption that the Maine Supreme Judicial Court's findings and conclusions in the bar disciplinary action demonstrate prejudice; rather, he must demonstrate both substandard performance by counsel and actual prejudice, in accordance with the test set forth in *Strickland*, 466 U.S. at 688, 694.

### B. Grounds Asserted and Analysis

#### 1. Failure to cross-examine the victim regarding the PlayStation

The victim testified at trial that she used a PlayStation at Petitioner's house on the day Petitioner sexually assaulted her.  (Trial Tr. at 73, 77.)  Petitioner testified in the post-conviction hearing that when he heard the victim's testimony at trial, he told counsel that he did not own a PlayStation.  (Post-conviction Tr. at 151.)  He essentially argues that the state court's post-conviction determination that counsel's failure to cross-examine the victim on the PlayStation issue did not constitute ineffective assistance is the result of an unreasonable application of *Strickland*. (Petition at 10.)  Petitioner contends that the victim's brother and her step-father owned PlayStations, and the PlayStation evidence supported Petitioner's alternate suspect theory.  (*Id.*)

In its initial decision, the Superior Court concluded that counsel's failure to cross-examine the victim on the PlayStation issue did not prejudice Petitioner because counsel had otherwise established that the victim had been exposed to suggestive

questioning, and that she had provided inconsistent reports regarding details about the assault. (Decision at 7-8.) The Superior Court concluded that

> if the jury was prepared to accept a fundamental inconsistency in the child's testimony regarding the nature of the touching that lay at the center of the case, it is unlikely that they would have rejected the critical part of the child's testimony on the basis of an inconsistent description of the toy with which she had earlier occupied herself at the Petitioner's home. . . . The court is not persuaded that having one additional inconsistency regarding a collateral matter to call to the jury's attention would likely have produced a different result in this case.

(*Id.*)

After the Law Court remanded the case, the Superior Court concluded both that counsel's performance "did not fall below an objective standard of reasonableness," and that Petitioner was not prejudiced. (Reconsidered Decision at 2-3.) As to counsel's performance, the court wrote:

> [T]rial counsel was justified in concluding that he had sown the seeds of reasonable doubt and achieved his objective of impeachment and at that point there was more to lose than gain by keeping a sympathetic child victim on the witness stand longer than was absolutely necessary. In this court's view, having already achieved his objective, trial counsel's tactical decision to get a sympathetic witness off the stand at the earliest possible time was well within the bounds of sound professional judgment. Such trial strategy is not constitutionally deficient.

(*Id.* at 2.) The court also concluded that because the PlayStation evidence was "a relatively minor point pertaining to a collateral issue," Petitioner had not demonstrated prejudice under "either the 'outcome determinative' test or the 'reasonable probability' test" of *Strickland*. (*Id.* at 3.)

In Petitioner's request for discretionary review of the Superior Court's decision after remand, Petitioner argued that counsel's failure to cross-examine on the PlayStation

testimony was objectively unreasonable, and that the court failed to consider whether cumulative errors resulted in prejudice. (Memorandum in Support of Certificate of Probable Cause at 1-2.) Petitioner relied in part on the Supreme Judicial Court's order in the bar disciplinary matter. (Memorandum in Support of Certificate of Probable Cause at 3-5.)

The Law Court concluded that the Superior Court did not err when the Superior Court determined that counsel did not provide ineffective assistance.[8] (Order Denying Certificate of Probable Cause). Petitioner fails to demonstrate that the state court decision was an unreasonable application of *Strickland*. The Law Court noted that its decision was based on its review of the record, and there is no suggestion that the Court failed to consider the "key arguments" in Petitioner's memorandum in support of a certificate of probable cause. *See Hurtado*, 245 F.3d at 18.

Furthermore, a review of the "totality of the evidence," as contemplated by *Strickland*, reveals that the record supports the state court's post-conviction findings regarding Petitioner's challenge to counsel's cross-examination of the victim. For instance, the record reflects (1) that at trial, counsel offered, through cross-examination of the hospital nurse examiner, evidence of the victim's inconsistent statements (Trial Tr. at 58-

---

[8] Regarding both the PlayStation and Spurwink issues, the decision under review, for purposes of 28 U.S.C. § 2254(d)(1), is the Law Court's order denying a certificate of probable cause, because the Law Court's decision is the final state court adjudication on the merits. *See Greene v. Fisher*, --- U.S. ---, ---, 132 S. Ct. 38, 45 (2011) (noting the last state-court adjudication on the merits of the petitioner's constitutional claim); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

59); (2) that counsel offered, through cross-examination of the victim's sister, evidence of suggestive questioning of the victim (Trial Tr. at 34-35); and (3) that counsel had legitimate reason not to prolong the cross-examination of a sympathetic witness (Post-conviction Tr. at 50, 117). Contrary to Petitioner's contention, the bar disciplinary order does not require a different conclusion. In short, the state court's determination was not an unreasonable application of *Strickland*.

### 2. Failure to introduce in evidence the victim's inconsistent statements to the Spurwink examiner

At trial, counsel did not cross-examine the victim about exculpatory statements she made during a forensic evaluation conducted by an examiner at Spurwink. (Trial Tr. at 53, 87-91.) The results of the Spurwink examination were not introduced at trial. *Theriault*, 2015 ME 137, ¶ 4, 125 A.3d 1163. The Law Court noted that at one point the victim told the Spurwink examiner that Petitioner "had not sexually assaulted her." *Id.* ¶ 28. Counsel testified that if he had sought to cross-examine the victim about her inconsistent statements, and the victim denied them, he might have offered the evidence through the Spurwink examiner. (Post-conviction Tr. at 117-18.)

The Superior Court addressed the potential Spurwink evidence on remand. (Reconsidered Decision at 3-4.) While acknowledging that another lawyer could have reached a different conclusion as to whether to pursue the victim's statements to the Spurwink examiner, the court concluded that counsel's decision not to offer the exculpatory evidence was not substandard, given that "the prosecution would then have introduced the rest of that evidence and the last word would have been that during that

same Spurwink interview, the child victim did [indeed] report that Petitioner had sexually assaulted her." (*Id.*) The Superior Court also concluded that Petitioner was not prejudiced, given that counsel had offered other evidence that the victim's testimony and statements about the incident were inconsistent, and that she had been subjected to suggestive questioning before she spoke with a professional interviewer. (*Id.* at 4 n.2.) The Superior Court denied relief. (*Id.* at 4.)

In support of his request of the Law Court for discretionary review of the Superior Court's reconsidered decision, Petitioner in essence argued that the value of the victim's exculpatory statements so far exceeded the risk of the victim's additional accusatory statements as to render counsel's decision unreasonable. (Memorandum in Support of Certificate of Probable Cause at 9.) The Law Court concluded that counsel had not provided ineffective assistance. (Order Denying Certificate of Probable Cause.)

The record plainly establishes that the Spurwink evidence was both inculpatory and exculpatory. The Law Court considered Petitioner's argument regarding the evidence, and concluded Petitioner had received effective assistance of counsel throughout the proceeding. (Order Denying Certificate of Probable Cause; Reconsidered Decision at 3-4.) Given the mixed nature of the Spurwink evidence and given the other evidence that raised questions about the reliability of the victim's testimony, the state court's determination that counsel's decision not to present the Spurwink evidence, either through the examiner or through cross-examination of the victim, did not constitute substandard performance nor result in prejudice to Petitioner was not an unreasonable application of *Strickland*.

### 3. Additional claims that were dismissed for lack of evidence of prejudice

The Law Court dismissed the remainder of Petitioner's claims due to the lack of evidence of prejudice. *Theriault*, 2015 ME 137, ¶ 26, 125 A.3d 1163. Each of the remaining issues was addressed in the Superior Court decision the Law Court reviewed in *Theriault*, 2015 ME 137, 125 A.3d 1163. Petitioner essentially argues that the Law Court's conclusion that Petitioner's allegations of prejudice were factually unsupported constitutes "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," pursuant to 28 U.S.C. § 2254(d)(2). *See Brumfield*, 135 S. Ct. at 2276.

The Law Court noted specifically that Petitioner "did not present *any* evidence about what information a private investigator might have found to provide an exculpatory explanation for the victim's accusations." *Theriault*, 2015 ME 137, ¶ 26, 125 A.3d 1163. Petitioner alleges that he wanted counsel to develop a theory that the victim's brother or step-father was an alternate suspect. (*Id.* at 7.) Based on the trial evidence, the state court determination that there was no evidence to suggest that a private investigator would have found an exculpatory explanation for the victim's accusations was not unreasonable.

The Law Court addressed the other claims in general terms, and concluded that the claims were unsupported by the evidence. *Theriault*, 2015 ME 137, ¶ 26, 125 A.3d 1163. The Law Court's review necessarily included a review of the following conclusions reached by the Superior Court and supported in the record:

The Superior Court concluded that Petitioner did not identify the witnesses whose testimony Petitioner maintains should have been secured, nor did Petitioner outline the substance of the testimony or how he was prejudiced without the testimony. (Decision at

4.)  In the post-conviction hearing, Petitioner testified that he wanted counsel to subpoena a detective in order to impeach the detective regarding a report that Petitioner alleged the detective had falsified.  (Post-conviction Tr. at 155.)  Petitioner testified that counsel rejected the idea on the basis that testimony from the detective "would only complicate matters."  (*Id.*)  Petitioner's testimony suggests that the detective would have been a hostile (i.e., unfavorable) witness; the Superior Court's conclusion that Petitioner failed to identify witnesses favorable to the defense is thus supported in the record and not unreasonable.

The Superior Court concluded that counsel's failure to obtain an expert witness to testify that suggestive interviewing techniques were used with the victim was not prejudicial.  (Decision at 4-5.)  The court reasoned that counsel made the point that the initial interviewers, particularly family members and possibly a nurse, may have asked leading questions, and it is within the jury's experience to understand that a child's responses may be susceptible to suggestive questioning.  (Decision at 5.)  The Superior Court's post-conviction conclusion is supported in the trial record; counsel raised the issue of suggestive questioning of the victim in opening statements, in cross-examination of the victim's sister and the nurse examiner, and in closing argument.  (Trial Tr. at 14-15, 34-35, 57, 119-20.)  There is no suggestion that expert testimony was necessary to establish the point, or that expert testimony would have produced a different result.

The Superior Court concluded that counsel's failure to obtain an expert witness to testify to the lack of physical evidence of the crime did not prejudice Petitioner.  The court first observed that the hospital nurse examiner, who qualified as an expert, testified that she would not have expected to find any notable injuries, based on the victim's report of

the nature of the touching. The court then noted that Petitioner had not identified any expert who would have testified to the contrary. (Decision at 5-6 & n.1.) Simply stated, the record evidence supports the Superior Court's post-conviction findings that the hospital nurse examiner's trial testimony constituted the relevant expert testimony and thus the lack of any other expert witnesses was not prejudicial. (Trial Tr. at 62-63; Post-conviction Tr. at 97-98.)

The Superior Court concluded that counsel's failure to obtain potentially exculpatory agency records regarding the victim from the Maine Department of Health and Human Services (DHHS) was not prejudicial because Petitioner failed to demonstrate that the records exist, or that if they did exist, that they contain exculpatory evidence. (Decision at 6.) Although counsel testified in the post-conviction hearing that he did not have a strategic reason for the decision not to request the records (Post-conviction Tr. at 37-38, 108), Petitioner has not demonstrated that the Superior Court's conclusion that Petitioner was not prejudiced was unreasonable. That is, without any evidence regarding the existence of or substance of the records, the record lacks any evidence that would support a prejudice finding.

The Superior Court concluded that counsel's failure to challenge the competency of the victim to testify was not prejudicial, (1) because the victim, who was nine years old at the time of the trial, demonstrated that she understood her obligation to testify truthfully, (2) because the victim's testimony indicated her ability to understand and respond appropriately to questioning, and (3) because Petitioner failed to provide any basis for a challenge to the victim's competency. (Decision at 7.) Counsel testified in the

post-conviction hearing that he did not observe anything about the victim that would have justified a challenge, either before or during the trial, to the victim's competency to testify, and the record contains no evidence to the contrary. (Post-conviction Tr. at 92-93, 108-09.)

The Superior Court concluded that counsel's failure to present evidence of Petitioner's good character at trial was not prejudicial, because Petitioner did not identify any potential witnesses or describe the evidence counsel should have presented. (Decision at 7.) Counsel testified in the post-conviction hearing that he did not believe that an offer of character evidence was prudent, because such evidence might have caused the court to permit the state to present unfavorable character evidence, including evidence of Petitioner's past convictions.[9] (Post-conviction Tr. at 39, 86-89, 119-20.) Under the circumstances, the Superior Court's conclusion was not unreasonable.

The Superior Court concluded that Petitioner was not prejudiced by counsel's alleged failure to advise him adequately regarding whether to testify. (Decision at 9.) The court found, based on the court's recollection of events and based on the record, that Petitioner "was well aware that the decision to testify or not was his decision to make." (*Id.*) The court found that Petitioner "indicated that he had talked the matter over with his lawyer and considered the pros and cons and he made his decision." (*Id.*) The record supports the court's conclusion. (Trial Tr. at 94-95; Post-conviction Tr. at 98-102, 172.)

---

[9] Petitioner testified in the post-conviction hearing about his prior convictions. (Post-conviction Tr. at 175-78.)

In sum, the Law Court's conclusions that the remaining allegations of prejudice were not supported in the record was not unreasonable under section 2254(d)(2). *See Hurtado*, 245 F.3d at 18.

### III.  CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases, and the recommendation is that the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 19th day of May, 2017.