UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARK J. THERIAULT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00576-JAW |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER AFFIRMING THE
RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

On February 8, 2011, a state court jury found Mark Theriault guilty of unlawful sexual contact and on February 9, 2011, a state superior court justice sentenced him to sixteen years' incarceration, all but eight years suspended. Having exhausted state court challenges to the conviction and sentence, Mr. Theriault comes to federal court for vindication, declaring that he has been "falsely accused and wrongfully convicted of this crime for which I have been wrongfully imprisoned for."

What makes Mr. Theriault's case unusual is that the Maine Supreme Judicial Court found that his defense lawyer violated Rules 1.1, 1.3, 1.4 and 8.4(a)(d) of the Maine Rules of Professional Conduct in his representation of Mr. Theriault and for this reason and for others, the Maine Law Court imposed discipline upon his lawyer. Despite this determination, the state courts concluded that this same defense counsel rendered effective assistance

of counsel in his case and that his professional conduct did not prejudice Mr. Theriault's defense.

The Court carefully reviewed Mr. Theriault's allegations and after doing so, concluded, like the Magistrate Judge, that Mr. Theriault has not demonstrated that an evidentiary hearing is warranted, that his allegations justify relief under 28 U.S.C. § 2254, or that a certificate of appealability should issue. In these rare circumstances, the Court is conscious that Mr. Theriault deserves a thorough explanation for why this Court has concluded his petition under 28 U.S.C. § 2254 must fail. The Court's analysis, which incorporates and expands upon a similar discussion by the Magistrate Judge, follows.

## I.  PROCEDURAL HISTORY

### A.  Trial and Direct Appeal

On July 11, 2008, a grand jury indicted Mr. Theriault for unlawful sexual contact with a minor under twelve years of age, in violation of 17-A M.R.S. § 255-A(1)(F-1).[1]  *State v. Theriault*, No. CARSC-CR-2008-00262, *Indictment* (Docket Record at 1).[2]  The indictment alleged that the sexual

---

[1]  The statute reads:

> A person is guilty of unlawful sexual contact if the actor intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is in fact less than 12 years of age and the actor is at least 3 years older and the sexual contact includes penetration. Violation of this paragraph is a Class A crime[.]

17-A M.R.S. § 255-A(1)(F-1).

[2]  The state court records were filed in paper form. (ECF No. 5).

contact included penetration.[3]  *Id.*  On February 7, 2011, a jury returned a guilty verdict following a one-day trial at which the victim, the victim's sister, and a hospital nurse testified.  *Trial Proc.* 130:12–15 (Docket Record at 4) (*Trial Tr.*).  On February 9, 2011, the State Court sentenced Mr. Theriault to sixteen years of imprisonment, with all but eight years suspended, to be followed by a term of six years of probation.  *J. and Commitment* (Docket Record at 5).

Mr. Theriault filed a notice of appeal and an application for leave to appeal his sentence on February 14, 2011.  (Docket Record at 6).  On February 17, 2011, Mr. Theriault retained a new attorney and filed a motion for a new trial.  (Docket Record at 7).  In June 2011, the Sentence Review Panel of the Maine Law Court denied Mr. Theriault's application for leave to appeal his sentence.  *State v. Theriault*, No. SRP-11-104 (Docket Record at 2). On August 19, 2011, the Law Court dismissed Mr. Theriault's appeal from the conviction due to lack of prosecution.  *State v. Theriault*, No. ARO-11-103, *Order Dismissing Appeal* (Docket Record at 2).  On October 31, 2012, the trial court denied Mr. Theriault's motion for a new trial.  *State v. Theriault*, No.

---

[3]      Mr. Theriault asserts that during the State's opening and closing arguments, the prosecutor improperly offered an expert medical opinion to the jury. *Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* at 11 (ECF No. 1) (*Habeas Pet.*); *Obj. to Recommended Decision on 28 U.S.C § 2254* at 8 (ECF No. 10) (*Pet.'s Obj.*). Specifically, he alleges that the prosecutor told the jury that the State was not required to prove that Mr. Theriault "actually penetrated" the victim. *Habeas Pet.* at 11; *Pet.'s Obj.* at 8. The record reveals that the State's attorney described the legal definition of penetration and acknowledged its obligation to prove penetration in both its opening and closing arguments. *Trial Proc.* 12:20–13:7; 117:6–18 (Docket Record at 4) (*Trial. Tr.*).   Contrary to Mr. Theriault's assertion, by making these comments, the State's attorney did not provide an expert medical opinion.

CARSC-CR-2008-00262, *Order Den. Mot. for New Trial* (Docket Record at 8).

## B.     State Post-Conviction Review

On August 17, 2012, Mr. Theriault filed a pro se petition for post-conviction review with the state trial court. *Theriault v. State*, No. CARSC-CR-2012-00437, *Pet. for Post-Conviction Rev.* (Docket Record at 1).   On November 5, 2012, Mr. Theriault retained his appellate counsel to represent him in the post-conviction proceeding, and on June 11, 2013, Mr. Theriault filed an amended petition alleging ineffective assistance of trial counsel. *Post-Conviction Rev. Am. Pet.* (Docket Record at 2).

The trial court held an evidentiary hearing on the petition on September 19, 2013. *Evid. Hr'g* (Docket Record at 2); *Tr.* (Docket Record at 2) (*Evid. Tr.*).   Both Mr. Theriault and his trial counsel, Attorney Allen Hanson, testified at the evidentiary hearing.   *Id.*   Following the hearing, on March 11, 2014, the trial court denied the petition. *Decision* (Docket Record at 2).   In its decision, the court summarized Mr. Theriault's allegations of ineffective assistance as follows: (1) failure to hire a private investigator; (2) failure to subpoena critical witnesses at trial; (3) failure to obtain an expert witness regarding the issue of suggestive interviewing of the minor victim; (4) failure to obtain an expert witness regarding the lack of physical findings; (5) failure to obtain exculpatory agency records; (6) failure to challenge the competency of the minor victim to testify; (7) failure to obtain character evidence pertaining to Mr. Theriault; (8) failure to impeach the minor victim

4

based on inconsistencies in her allegations; and (9) failure to adequately counsel Mr. Theriault regarding his decision not to testify. *Id.* at 3–9. The trial court concluded that the prejudice prong of the test established in *Strickland v. Washington*, 466 U.S. 668 (1984), controlled the outcome, and that Mr. Theriault had not demonstrated prejudice with respect to any of the allegations of ineffective assistance of counsel. *Id.* On March 31, 2014, Mr. Theriault requested discretionary review of the post-conviction decision from the Law Court. *Theriault v. State*, No. Aro-14-158, *Notice of Appeal* (Docket Record at 1).

Meanwhile, on June 2, 2014, the Supreme Judicial Court issued an order in a bar disciplinary matter regarding Attorney Hanson, Mr. Theriault's trial counsel. *Bd. of Overseers of the Bar v. Hanson*, No. BAR-13-21 (June 2, 2014) (Mead., J.). The Maine Supreme Judicial Court made a number of findings based on stipulated facts. *Id.* at 1–2, 5–6. In addition, the Maine Law Court concluded:

> Attorney Hanson has acknowledged various errors on his part in relation to his representation of Mark Theriault. He understands and agrees that he did not utilize the court-approved private investigator to independently investigate the case or to pursue the areas of investigation suggested by his client prior to the trial. He understands and agrees that he did not spend sufficient time with his client to prepare him for the trial, or to make his decision regarding whether he would testify. He also understands and agrees that he did not request additional time to prepare his case for sentencing, or to prepare his client and the other witnesses for the sentencing proceeding. Attorney Hanson understands and agrees that by those failures, he failed to reasonably communicate with his client; to provide competent representation; or to act with reasonable diligence in

5

his client's defense. Although his actions were not intentional attempts to violate the Maine Rules of Professional Conduct they nevertheless constitute violations of Rules 1.1, 1.3, 1.4 and 8.4(a)(d).

*Id.* at 6–7.

On June 16, 2014, the Law Court issued a certificate of probable cause, permitting Mr. Theriault to appeal from the trial court's post-conviction ruling. *Theriault v. State*, No. Aro-14-158 (Docket Record at 2). On December 10, 2015, the Law Court vacated the trial court's judgment and remanded the case for further proceedings. *Theriault v. State*, 2015 ME 137, at ¶ 30, 125 A.3d 1163.[4] As an initial matter, the Law Court concluded that Mr. Theriault was not entitled to a presumption of prejudice; rather, Mr. Theriault was required to prove that counsel's alleged errors caused actual prejudice. *Id.* ¶¶ 16–18. The Law Court also held that the trial court misapplied the prejudice prong of the *Strickland* test:

> By employing only a portion of the *Strickland* principle, the court in effect employed the outcome-determinative test rejected in *Strickland* because it determined only whether the outcome was likely different than it would have been if the petitioner had been properly represented, without considering whether the guilty verdict and resulting conviction were unreliable and not worthy of confidence.

*Theriault v. State*, 2015 ME 137, at ¶ 25, 125 A.3d 1163.

Nevertheless, the Law Court noted that for several of Mr. Theriault's challenges to Attorney Hanson's conduct, Mr. Theriault offered no evidence of

---

[4] The Law Court decided the case on October 29, 2015, and corrected the decision on December 10, 2015. *Theriault v. State*, 2015 ME 137, 125 A.3d 1163.

prejudice. *Id.* ¶ 26. Therefore, the Law Court concluded that Mr. Theriault "failed to demonstrate entitlement to post-conviction relief regardless of how one might characterize the element of prejudice, because the complete absence of any evidence of prejudice would preclude any prospect of proving that the guilty verdict was unreliable and not entitled to confidence." *Id.*

However, the Law Court concluded that two of Mr. Theriault's claims of prejudice warranted reconsideration under the proper standard, including Mr. Theriault's claim that counsel failed to impeach the victim by presenting evidence that he did not have a PlayStation at his house, as well as his claim that counsel failed to present any evidence of prior exculpatory statements that the victim made during her Spurwink Child Abuse evaluation. *Id.* ¶¶ 27–29. Consequently, the Law Court remanded the matter to the trial court for further proceedings. *Id.* ¶ 30.

In December 2015, the parties each submitted written argument on the issues remanded to the trial court. *Theriault v. State*, No. CARSC-CR-2012-00437, *Post-Conviction Rev. Pet./Appellant's Br.* (Docket Record at 3); *Theriault v. State*, No. CARSC-CR-2012-00437, *State's Answer to Remand Order* (Docket Record at 3). On March 3, 2016, the trial court issued a decision in which it applied both prongs of the *Strickland* test to the claims regarding the PlayStation and the Spurwink evidence. *Theriault v. State*, No. CARSC-CR-2012-00437, *Recons. Decision* (Docket Record at 3) (*Recons. Dec.*). The trial court concluded that counsel's failure to impeach the victim

by presenting evidence about the PlayStation or the Spurwink evaluation was not constitutionally deficient and did not prejudice Mr. Theriault. *Id.* at 2–4.

Mr. Theriault requested discretionary review of the trial court's decision. *Theriault v. State*, No. Aro-16-190, *Notice of Appeal* (Docket Record at 2). Counsel was appointed, and Mr. Theriault argued that the trial court once again had misapplied the *Strickland* standard. *Theriault v. State*, No. Aro-16-190, *Mem. in Supp. of Certificate of Probable Cause* at 1–2 (Docket Record at 2). Mr. Theriault asserted that trial counsel's failure to impeach the victim based on her inconsistent statements constituted deficient performance and that the cumulative effect of counsel's errors prejudiced Mr. Theriault. *Id.* at 7–13.

On September 19, 2016, the Law Court denied discretionary review. *Theriault v. State*, No. Aro-16-190, *Order Den. Certificate of Probable Cause* (Docket Record at 3). The Law Court concluded, "After review of the record, which demonstrates that Theriault received effective assistance of counsel throughout the entirety of the proceeding, the Court has determined that no further hearing or other action is necessary to a fair disposition." *Id.*

C. **Federal Post-Conviction Review**

On November 21, 2016, Mr. Theriault filed a § 2254 petition with this Court.[5] *Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in*

---

[5]     Mr. Theriault attests that he placed his § 2254 petition in the prison mailing system on November 15, 2016. *Habeas Pet.* at 18.

*State Custody* (ECF No. 1) (*Habeas Pet.*).[6]  The State answered on December 26, 2016.  *Resp't's Answer to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (ECF No. 4).  Mr. Theriault replied on January 9, 2017.  *Pet.'s Reply to Att'y Gen.'s Answer Pursuant to 28 U.S.C. § 2254* (ECF No. 7).

On May 19, 2017, the United States Magistrate Judge issued a recommended decision in which he recommended that the Court dismiss Mr. Theriault's petition for habeas relief and that the Court deny a certificate of appealability.  *Recommended Decision on 28 U.S.C. § 2254 Pet.* (ECF No. 9) (*Rec. Dec.*).  Mr. Theriault filed an objection to the Recommended Decision on June 2, 2017.  *Obj. to Recommended Decision on 28 U.S.C. § 2254* (ECF No. 10) (*Pet.'s Obj.*).

## II.    LEGAL STANDARD

As the Magistrate Judge's Recommended Decision is on an application for post-trial relief made by an individual convicted of a criminal offense, this Court reviews the Recommended Decision de novo. 28 U.S.C. § 636(b)(1)(B).

A person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court may not grant habeas relief based on claims that were adjudicated on the merits in state court proceedings unless the state adjudication:

---

[6]      A word on pagination.  For some filings, such as Mr. Theriault's habeas petition, the pagination of the ECF filing system differs from the pagination of the document itself.  The Court's citations are to the ECF pagination.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

In this case, both § 2254(d)(1) and § (d)(2) apply to this Court's review of the state adjudication. The Court applies § 2254(d)(2) to the state's conclusion that no evidence exists to support most of Mr. Theriault's allegations of ineffective assistance. *See Brumfield v. Cain*, __U.S.__, __, 135 S. Ct. 2269, 2276–77 (2015) (applying section 2254(d)(2) to a state court's finding that "no evidence" existed to support a habeas claim). The Court applies § 2254(d)(1) to the state's determination that Mr. Theriault's claims regarding the PlayStation and the Spurwink evaluation fail to establish ineffective assistance of counsel.

Section 2254(d)(1) "involves the layering of two standards. The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted." *Winfield v. O'Brien*, 775 F.3d 1, 8 (1st Cir. 2014) (quoting *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001)). "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v.*

*Jackson*, __U.S.__,__, 133 S. Ct. 1990, 1992 (2013) (internal quotation marks omitted) (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). "The ultimate question on habeas . . . is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Hurtado*, 245 F.3d at 20. "A decision can still be reasonable even if the reviewing court thinks it is wrong . . . ." *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007) (citing *Terry Williams v. Taylor*, 529 U.S. 362, 411 (2000)).

To succeed on a post-conviction claim of ineffective assistance of counsel, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. In other words, the petitioner must demonstrate both deficient performance of counsel as well as prejudice to the petitioner. To establish ineffective assistance of counsel, counsel's representation must have resulted in "a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. In determining whether counsel provided ineffective assistance, a court must consider "the totality of the evidence." *Id.* at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

## III.    DISCUSSION

The Court must be  mindful of the limited scope of its review under §
2254.  The Court's task is constrained.  It is not to pronounce whether it
agrees with the state court's rulings; rather, it is to assess the reasonableness
of the outcome.  Based on its review of the record below, the Court is satisfied
that the state adjudication involved a reasonable application of federal law
and that the decision was based on a reasonable determination of the facts in
light of the evidence presented.  Accordingly, the Court concurs with the
recommendation of the Magistrate Judge and denies Mr. Theriault's petition
under § 2254.

In his petition, Mr. Theriault alleges that trial counsel was ineffective
by (1) failing to cross-examine the alleged victim regarding whether Mr.
Theriault had a PlayStation at his house; (2) failing to cross-examine the
minor victim regarding her statements to the Spurwink evaluator and other
inconsistencies in her allegations; (3) failing to communicate sufficiently; (4)
instructing Mr. Theriault not to testify and failing to prepare him to testify;
(5) failing to hire a private investigator to look into alternative suspects
despite receiving authorization from the court to retain an investigator; (6)
failing to obtain an expert witness regarding the lack of physical findings; (7)
failing to obtain an expert witness regarding the issue of suggestive
interviewing of the minor victim; (8) failing to subpoena critical witnesses at

trial; (9) failing to obtain potentially exculpatory agency records; and (10) failing to challenge the competency of the minor victim to testify. *Habeas Pet.* at 5, 7, 10–11.

The state courts concluded that Mr. Theriault failed to prove that he suffered any prejudice as a result of the first two allegations. *Recons. Dec.* at 2–4; *Order Den. Certificate of Probable Cause* at 1. As to the remaining claims, the state courts concluded that Mr. Theriault provided no evidence of how he was prejudiced by counsel's alleged failures. *Theriault v. State*, 2015 ME 137, at ¶ 26; *Recons. Dec.* at 1, n.1. The Court addresses each conclusion in turn, followed by a discussion of Attorney Hanson's suspension

A.   **Failure to Cross-Examine the Victim Regarding the PlayStation**

At trial, the victim testified that she played on Mr. Theriault's PlayStation console the day he sexually assaulted her. *Trial Tr.* 73:11–14, 77:15–19. Mr. Theriault alleges that upon hearing this, he told Attorney Hanson that he did not own a PlayStation. *Evid. Tr.* 151:10–152:13. Mr. Theriault asserts that Attorney Hanson was ineffective because he failed to impeach the victim based on her testimony about the PlayStation. *Habeas Pet.* at 10.

After the Law Court remanded the case for further proceedings on the PlayStation issue, the trial court concluded that Mr. Theriault failed to establish either the performance or prejudice prong of the *Strickland* test. *Recons. Dec.* at 2–3. The trial court noted that counsel had already

established that the victim was exposed to suggestive interviewing techniques and that the victim previously gave inconsistent accounts of the assault. *Id.* at 2. As such, the trial judge concluded that "trial counsel was justified in concluding that he had . . . achieved his objective of impeachment and at that point there was more to lose than gain by keeping a sympathetic child victim on the witness stand any longer than was absolutely necessary." *Id.* at 2. The trial court further concluded that "trial counsel's tactical decision to get a sympathetic witness off the stand at the earliest possible time was well within the bounds of sound professional judgment. Such trial strategy is not constitutionally deficient." *Id.*

The trial court next turned to whether, even if counsel's performance were deficient, Mr. Theriault had met the prejudice prong of *Strickland*. First, the trial judge observed that the Maine Supreme Judicial Court had not concluded that trial counsel's performance was so deficient "that prejudice could be presumed without proof." *Id.* The Superior Court Justice framed the question: "whether trial counsel's alleged deficient performance was such that it so undermined the proper functioning of the adversarial process that the trial result cannot be relied upon with confidence." *Id.* at 3. The trial judge observed that Mr. Theriault's claim "relates to a failure of cross examination on what this court regards as a relatively minor point pertaining to a collateral issue." *Id.* The trial court concluded that Mr. Theriault "has not met his burden of proof under either the 'outcome

determinative' test or the 'reasonable probability' test as articulated in the Law Court's mandate." *Id.*

The Law Court, upon review of the record, concluded that the trial court did not err in denying Mr. Theriault's request for post-conviction relief.[7] *Order Den. Certificate of Probable Cause* at 1. The Maine Supreme Judicial Court wrote that:

> After a review of the record, which demonstrates that Theriault received effective assistance of counsel throughout the entirety of the proceeding, the Court has determined that no further hearing or other action is necessary to a fair disposition.

*Id.*

This Court concludes that the state court's application of *Strickland* was reasonable. Mr. Theriault makes no argument to the contrary. The record indicates that at trial, counsel provided the jury reason to question the victim's testimony. Specifically, counsel established that the victim's sister had posed suggestive questions to the victim following the assault, *Trial Tr.* 31:2–6, 34:8–35:24, and that the victim gave an inconsistent account of the assault to the hospital nurse. *Trial Tr.* at 58:17–24, 59:21–23. Counsel also

---

[7] Regarding both the PlayStation and the Spurwink issues, the decision under review for purposes of 28 U.S.C. § 2254(d)(1) is the Law Court's Order Denying a Certificate of Probable Cause, because the Law Court's decision is the final state court adjudication on the merits. *See Greene v. Fisher*, 565 U.S. 34, 39–40, 132 S. Ct. 38, 45 (2011). However, the First Circuit has noted that on habeas review, the federal court may "supplement the state courts' factual findings with other portions of the record that are consistent with them." *Clements v. Clarke*, 592 F.3d 45, 47 (1st Cir. 2010). "Thus, although the federal court may consider whether the state trial court's factual findings, and the judgment based on those findings, constitute an objectively reasonable application of [federal law], the federal court reviews the Law Court's decision and the record as a whole." *Nelson v. Liberty*, No. 1:16-cv-261-GZS, 2016 U.S. Dist. LEXIS 170641 (D. Me., Dec. 9, 2016)., at *10, n.4 (citing *Hurtado*, 345 F.3d at 18 (1st Cir. 2001)).

explained at the post-conviction evidentiary hearing that some of the jurors were crying during the victim's testimony, and therefore, he did not want to prolong the length of time that the victim was on the stand. *Evid. Tr.* 50:2–18. Based on this record, the Court concludes that the state adjudication did not involve an unreasonable application of the *Strickland* standard.

## B.     Failure to Impeach Based on Inconsistent Allegations

In addition, Mr. Theriault asserts that counsel was ineffective because he failed to impeach the victim based on her inconsistent renditions of the assault. *Habeas Pet.* at 11. The record indicates that at different times, the victim stated that Mr. Theriault assaulted her in the bedroom, in the bathroom, and in the living room, and with her clothes on and with her clothes off. *Evid. Tr.* 31:14–35:10. Moreover, at one point, the victim told an examiner at the Spurwink Child Abuse Program that Mr. Theriault did not assault her at all; later, however, she informed the examiner that Mr. Theriault had, in fact, assaulted her. *Id.* 35:8–20.

After the Law Court remanded the case, the trial court concluded that Mr. Theriault failed to satisfy either the performance or the prejudice prongs of the *Strickland* test. *Recons. Dec* at 2–3. Of the inconsistent statements to the Spurwink examiner, the trial court stated:

> The Petitioner's suggestion that counsel was ineffective for not introducing that evidence fails to recognize that such evidence would not have been introduced on an *a la carte* basis. It seems a certainty that had trial counsel sought to introduce that part of the evidence that might have been helpful, the prosecution would then have introduced the rest of that evidence and the

16

> last word would have been that during that same Spurwink interview, the child victim did [indeed] report that the Petitioner had sexually assaulted her. This would not have been helpful.

*Recons. Dec* at 3. The trial court recognized that different lawyers may have opted to introduce the potentially exculpatory Spurwink evidence but that Attorney Hanson's failure to do so did not demonstrate "serious incompetency, inefficiency, or inattention amounting to performance below what might be expected from an ordinary fallible attorney." *Id.* at 3–4.

Moreover, the trial court determined that Mr. Theriault failed to prove prejudice because the jury already had two bases to question the victim's testimony. *Id.* at 4. First, counsel established that the victim told the hospital nurse that the touching had occurred over the clothing, and not under as the victim testified at trial. *Trial Tr.* at 58:17–24, 59:21–23. Second, counsel offered evidence that the victim's sister posed leading questions to the victim following the assault. *Trial Tr.* 31:2–6, 34:8–35:24. Therefore, the trial court concluded that counsel's failure to introduce evidence of the additional inconsistencies did not call the reliability of the verdict or conviction into question. *Recons. Order* at 4. As with the PlayStation issue, the Law Court agreed with the trial court that counsel had not provided ineffective assistance on this issue either. *Order Den. Certificate of Probable Cause* at 1.

The Court agrees with the Magistrate Judge that the Spurwink evidence "was both inculpatory and exculpatory." *Rec. Dec.* at 16. As the

trial court pointed out, counsel could have cross-examined the victim about her statement to the Spurwink examiner that Mr. Theriault did not assault her, but on redirect, the prosecution could have introduced evidence that during the same interview, the victim alleged that Mr. Theriault had, in fact, assaulted her. Additionally, counsel testified at the evidentiary hearing that the jurors' reactions to the victim's testimony prompted him to minimize the amount of time the victim spent on the stand. *Evid. Tr.* 50:2–18.

A review of the "totality of the evidence" indicates that there is a further reason why counsel chose not to introduce evidence of the victim's inconsistent statements. At the evidentiary hearing, counsel testified that he was aware of allegations that Mr. Theriault had abused the victim on more than one occasion. *Id.* 77:2–24. He acknowledged that if he pressed the victim regarding her previous inconsistent descriptions of the offense, then the prosecution would have been able to introduce evidence to prove that her inconsistent statements actually referred to other instances of sexual assault at the hands of Mr. Theriault. *Id.* 82:2–24. Because counsel had legitimate reasons not to press the victim on her prior inconsistent statements and because other evidence already raised questions about the reliability of the victim's testimony, the state court's determination that Mr. Theriault failed to satisfy the performance and prejudice prongs of *Strickland* was not unreasonable.

### C.  Claims Dismissed for Lack of Evidence

The Law Court dismissed the rest of Mr. Theriault's allegations of ineffective assistance because Mr. Theriault "offered no evidence whatever of how he was prejudiced by those alleged failures." *Theriault*, 2015 ME 137, ¶ 26, 125 A.3d 1163. This Court agrees with the Law Court's assessment and concludes that the Law Court's decision was based on a reasonable determination of the facts for the reasons set forth in the Magistrate Judge's Recommended Decision. *Rec. Dec.* 17–21. However, in comparing the Law Court's decision with Mr. Theriault's allegations, the Court has identified two claims that warrant further discussion.

### 1.    Failure to Hire a Private Investigator

Mr. Theriault alleges that counsel was ineffective because he failed to hire a private investigator—despite obtaining state funds to do so—to explore whether the victim had a motivation to lie. *Post-Conviction Rev. Am. Pet.* at 1–2; *Habeas Pet.* at 5, 7. The trial court held that Mr. Theriault failed to articulate what the victim's motive might have been and that he failed to provide evidence of how a private investigator might have facilitated securing that information. *Decision* at 3–4. The Law Court agreed that Mr. Theriault failed to present "*any* evidence about what information a private investigator might have found to provide an exculpatory explanation for the victim's accusations." *Theriault*, 2015 ME 137, ¶ 26, 125 A.3d 1163 (emphasis in original).

It is true that in the post-conviction evidentiary hearing, counsel

acknowledged that Mr. Theriault told him that he suspected the victim was being abused at home by either her brother—who Mr. Theriault believed may have been sexually active with his other sister—or her father—who Mr. Theriault suspected was a sexual offender. *Evid. Tr.* 18:19–21:25. Based on Mr. Theriault's suspicions, Attorney Hanson wrote in his notes that the defense "may want [a] private investigator," and he obtained funding for an investigator from the court. *Id.* 20:22–24, 41:8–20. Attorney Hanson testified that he had "potential things for an investigator to do, [as well as] specific names of people that Mr. Theriault wanted interviewed." *Id.* 21:22–25. Even so, as the Maine Supreme Judicial Court implied, inculpating the victim's father and brother would not have exculpated Mr. Theriault. Occasionally, the prosecution in a sex offense involving a minor will argue that the victim's description of sexual acts is beyond what one would expect a child to know, unless she had in fact been subjected to the acts. Here, no such argument was made by the state prosecutor at the trial. *Trial Tr.* 6:19–13:11 (*State's Opening Statement*); 114:15–118:11 (*State's Closing Argument*); 124:4–127:4 (*State's Rebuttal*). Nor did the defense allude to this argument. *Id.* 13:16–15:23 (*Defense Opening Statement*); 118:14–124:1 (*Defense Closing Argument*).

Another possible defense argument could have been that the victim mistook Mr. Theriault for her father and brother. But Mr. Theriault has never made this argument and as the victim was six years old at the time of

the incident and the circumstances of the incident do not indicate any reason for her to have confused Mr. Theriault with her father or brother, this argument does not appear to apply.

In sum, it is difficult to understand what Mr. Theriault would have gained had the private investigator confirmed that either the victim's father or brother had improper sexual contact with the victim since their actions, even if true, would not have somehow justified Mr. Theriault's alleged actions.

Regardless of these issues, the Court still concludes that Mr. Theriault has failed to demonstrate "that counsel's representation fell below an objective standard of reasonableness," and that the "errors of counsel . . . actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 688, 693. With respect to the performance prong, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

Here, Attorney Hanson testified at the evidentiary hearing that he did not wish to introduce evidence on Mr. Theriault's theory regarding the victim's motivation to lie because it would have opened the door to damaging statements attributed to Mr. Theriault in a police report. *Evid. Tr.* 85:8–14.

At the evidentiary hearing, Attorney Hanson was asked about the police investigator's discussions with Mr. Theriault. *Id.* 84:13–85:14. Attorney Hanson confirmed that the police report indicated that Mr. Theriault had not started off with allegations about the family and that Mr. Theriault had said: "If they want to do shit like that, I want to do some shit, too." *Id.* 84:22–85:1. Attorney Hanson confirmed that he was concerned that if he opened the door to alternative suspects, his statements to the police investigator would have become admissible. *Id.* 85:8–14 ("It certainly could be brought in. Yes"). In fact, none of Mr. Theriault's statements to the police investigator was introduced at trial. *Id.* (Q. "To your recollection and understanding, did the State get any of those statements before the jury? A. The statements of Mark? Q. Correct. A. No, I don't believe they did"). Thus, Attorney Hanson has identified a legitimate reason not to pursue the investigation that Mr. Theriault suggested.

The Court, applying a "heavy measure of deference to counsel's judgment" concludes that Mr. Theriault's decision not to retain an investigator was reasonable and that counsel's performance fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 691.

Neither has Mr. Theriault demonstrated that counsel's failure to hire a private investigator was prejudicial. Mr. Theriault must show that counsel's performance undermines confidence in the outcome of the case and renders

that outcome unreliable. *Id.* at 687. Yet Mr. Theriault offers only an unsupported theory that the victim's brother or father were the actual perpetrators. Such bare speculation as to what the investigation may have uncovered is insufficient to call the reliability of the conviction into question. Therefore, the Court concludes that Mr. Theriault has failed to allege ineffective assistance of counsel based on Attorney Hanson's failure to hire a private investigator.

### 2. Failure to Obtain Administrative Records

Additionally, Mr. Theriault faults counsel for failing to apply for a "Clifford Order" to seek an in-camera review of the victim's Department of Health and Human Services (DHHS) record. *Decision* at 6; *Habeas Pet.* at 7. The trial court stated that Mr. Theriault failed to demonstrate that such records exist, or if they do, what exculpatory evidence they might contain. *Dec.* at 6. The Law Court agreed that Mr. Theriault "offered no evidence whatever of how he was prejudiced" by counsel's failure to request the records. *Theriault*, 2015 ME 137, ¶ 26, 125 A.3d 1163.

Attorney Hanson's testimony at the post-conviction evidentiary hearing provided a clue about what the DHHS records might contain. Attorney Hanson testified that the victim's Spurwink evaluation record suggested that the victim "had some type of behavioral or social-type issues." *Evid. Tr.* 37:2–5. Presumably, Mr. Theriault suspects that DHHS records contain additional information about the victim's behavioral issues.

Nevertheless, this testimony falls short of establishing that Attorney Hanson provided ineffective assistance. As the trial court pointed out, there is no indication that DHHS actually compiled records on the victim. Further, there is no evidence that the DHHS records, if they exist, relate to the behavioral issues mentioned in the Spurwink evaluation. Indeed, it is not even clear what behavioral problems the Spurwink evaluators identified and how those issues might have affected the criminal proceedings in this case. Without more, the Court concludes that the state court adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

## D. Relevance of Subsequent Attorney Discipline

Mr. Theriault points out that the Maine Supreme Judicial Court disciplined his attorney for the way he conducted Mr. Theriault's defense, but later concluded that his lawyer rendered effective assistance of counsel for purposes of the Sixth Amendment:

> It is quite obvious that trial counsel's performance did fall below the professional norm of reasonableness. Trial counsel being disciplined for it speaks for itself. He was also found guilty of violating three other Maine Rules of Professional Conduct. There is simply no possibility that any one person can say that this trial counsel performed his legal duties and legal responsibilities to me as my attorney effectively, when in all actuality he has in fact been disciplined by the Law Court for that exact same ineffective/unreasonable performance.

Pet'r's Obj. at 4. Mr. Theriault's dissatisfaction is understandable, but under the law, there is no contradiction between the Maine Supreme Judicial

Court's conclusion that his attorney's performance was both deserving of discipline and constitutionally sufficient.

The legal standards for a violation of the Sixth Amendment right to counsel are not identical to the standards for disciplining members of the legal profession. Bar association standards and rules of professional conduct "are guides to determining what is reasonable" for purposes of an ineffective assistance of counsel claim, "but they are only guides." *Strickland*, 466 U.S. at 688. While they both involve the conduct of attorneys, the Sixth Amendment and bar oversight standards do not serve exactly the same purposes. The right to effective assistance "ensure[s] that criminal defendants receive a fair trial" in their particular case, while bar oversight bodies seek to "improve the quality of legal representation" more generally. *Id.* at 689.

In other words, attorneys can fall short of the local rules of professional conduct, subjecting them to discipline, without necessarily being so deficient that their performance undermined the reliability of the trial. As the Supreme Court explained in *Strickland*, defense counsel enjoy the benefit of a "strong presumption" that their conduct "falls within the wide range of reasonable professional assistance." 466 U.S. at 689. The Supreme Court devised these standards in part to avoid "intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation" because to do so would "encourage the proliferation of ineffectiveness challenges." *Id.* at

690. The *Strickland* Court expressed concern that "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Id.*

Even though it may seem counterintuitive, the fact that the attorney was determined to have violated the rules of professional conduct in representing a defendant is one factor in determining whether the lawyer violated the *Strickland* standards, but it is not determinative. Even when the Defendant's attorney was disciplined or disbarred, most courts have generally still required criminal defendants to satisfy the full *Strickland* tests of performance and prejudice in order to establish an ineffective assistance claim. *See e.g. Crawford v. Lampert*, 98 F. App'x 636, 638 (9th Cir. 2004) (concluding that "disbarment, by itself, does not establish a claim of ineffective assistance of counsel"); *United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000) (holding that "the fact of suspension does not, by itself, render counsel ineffective under the Sixth Amendment. Instead, the normal Strickland rule applies and a defendant must meet his burden of showing deficient performance at trial which resulted in prejudice"); *Reese v. Peters*, 926 F.2d 668, 670 (7th Cir. 1991) (noting the difference between "[t]he *constitutional* question" about the "advocate's competence" and disbarment, which can occur for other reasons, including technical violations) (emphasis

in original); *Waterhouse v. Rodriguez*, 848 F.2d 375, 383 (2d Cir. 1988) (declining to extend per se ineffective assistance rule to disbarment cases, and limiting it to cases of conflict of interest or egregious conduct); *United States v. Mouzin*, 785 F.2d 682, 697 (9th Cir. 1986) ("the infliction of discipline upon an attorney previously qualified and in good standing will not and should not transform his services into ineffective assistance").

## IV. CONCLUSION

Having reviewed and considered the United States Magistrate Judge's recommended decision, as well as Mr. Theriault's objections, the Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in his Recommended Decision and in this Order. The Court determines that no further proceedings are necessary and denies Mr. Theriault's 28 U.S.C. § 2254 petition. Because the state adjudication did not result in a decision that was contrary to, or involved an unreasonable application of federal law, and because the state proceedings did not result in a decision that was based on an unreasonable determination of the facts, the Court concludes that Mr. Theriault is not entitled to habeas relief.

1. It is therefore <u>ORDERED</u> that the Recommended Decision (ECF No. 9) of the Magistrate Judge be and hereby is <u>AFFIRMED</u>.

2. Accordingly, it is hereby <u>ORDERED</u> that Mark Theriault's Petition Under 28 U.S.C. § 2254 (ECF No. 1) be and hereby is <u>DENIED</u>.

3. It is further <u>ORDERED</u> that no certificate of appealability should issue in the event that Mark Theriault files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of August, 2017